## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| PLUM HOUSE IV, INC. | : | |
| | : | |
| v. | : | Civil No. CCB-15-2294 |
| | : | |
| WELLS FARGO MERCHANT | : | |
| SERVICES, LLC | : | |
| | : | |

## MEMORANDUM

Plum House IV, Inc. ("Plum House"), a Maryland corporation that operates a restaurant, has brought suit against Wells Fargo Merchant Services, LLC ("WFMS"), American Express Travel Related Services Company, Inc. ("American Express"), and John Doe/ABC Company ("John Doe/ABC Co.") to recover American Express credit card payments made by patrons at its restaurant that it alleges WFMS and American Express improperly routed to John Doe/ABC Co. Now pending before this court is WFMS's motion to dismiss the complaint for failure to state a claim. (Mot. Dismiss, ECF No. 14; *see also* Stipulation, ECF No. 27.) Plum House opposed that motion, (Resp. Opp'n, ECF No. 28), and WFMS replied, (Reply, ECF No. 33). For the reasons that follow, WFMS's motion to dismiss Plum House's negligence claim will be granted, and WFMS's motion to dismiss Plum House's breach of contract claim will be granted in part and denied in part.

## BACKGROUND

Plum House is a Maryland corporation with its principal office located in Baltimore County that operates a restaurant. (Compl. ¶ 1, ECF No. 2.) The restaurant allows its customers to pay with credit cards, including American Express credit cards. (*Id.* ¶ 5.) As alleged in the complaint, American Express assigns each establishment a merchant identification number,

tracks all charges made to that number, and sends payments directly to the establishment assigned to that number. (*Id.* ¶ 8.) In October 2012, Plum House contracted with WFMS to provide credit card processing services for the restaurant. (*Id.* ¶ 6.) According to the complaint, WFMS assigns an account number to any retail establishment it services, and it associates the American Express ID number with that account. (*Id.* ¶ 9.) WFMS processes all credit card charges for the establishment, and sends the total amount of American Express charges to American Express using the American Express ID number associated with the WFMS account number. (*Id.*)

Plum House alleges that WFMS entered the wrong American Express ID number when it created Plum House's account, and that American Express either provided WFMS with the wrong merchant ID number or failed to correct the allegedly inaccurate one used by WFMS. (*Id.* ¶¶ 10, 11.) The plaintiff claims that, as a result, all American Express payments at Plum House's restaurant between November 1, 2012, and November 6, 2014, totaling $349,395.14, actually went to John Doe/ABC Co., an unknown third party. (*Id.* ¶¶ 12, 13.) On or about October 22, 2014, American Express notified Plum House that its account had been cancelled because American Express could not verify certain legally required information. (*Id.* ¶ 14.) Through a series of telephone conversation with WFMS and American Express, Plum House apparently discovered the payments to John Doe/ABC Co. (*Id.* ¶ 15.) American Express credited Plum House $53,164.49, an amount that represented American Express credit card charges made by customers at the plaintiff's restaurant during the ninety-day period immediately prior to November 6, 2014. (*Id.* ¶ 16.)

Plum House sued WFMS, American Express, and John Doe/ABC Co. in Circuit Court for Baltimore County. Plum House has brought claims against WFMS and American Express for

negligence and breach of contract, and against John Doe/ABC Co. for unjust enrichment and constructive trust. (Compl. ¶¶ 18-45.) On August 5, 2015, WFMS removed the case to this court. (Docket Entry No. 1.) On August 31, 2015, WFMS filed a motion to dismiss the complaint for improper venue and for failure to state a claim, pursuant to Rules 12(b)(3) and 12(b)(6) of the Federal Rules of Civil Procedure. (Mot. Dismiss.) On September 24, 2015, American Express filed a motion to dismiss for a lack of subject-matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. (Withdrawn American Express Mot. Dismiss, ECF No. 20.) In a stipulation approved by this court on October 29, 2015, American Express withdrew its motion to dismiss, and WFMS withdrew the portion of its motion to dismiss relating to improper venue. (Stipulation 1.) Also in the stipulation, Plum House, WFMS, and American Express agreed that New York law would apply to the plaintiff's causes of action. (*Id.*) On November 9, 2015, Plum House filed its response in opposition to WFMS's motion to dismiss. (Resp. Opp'n.) On November 25, 2015, WFMS filed its reply. (Reply.) On December 29, 2015, American Express filed its answer to Plum House's complaint, and filed a cross claim against John Doe/ABC Co. (Answer, ECF No. 36.)

## STANDARD OF REVIEW

When ruling on a motion under Rule 12(b)(6), the court must "accept the well-pled allegations of the complaint as true," and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). "Even though the requirements for pleading a proper complaint are substantially aimed at assuring that the defendant be given adequate notice of the nature of a claim being made against him, they also provide criteria for defining issues for trial and for early disposition of inappropriate complaints." *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). "The

mere recital of elements of a cause of action, supported only by conclusory statements, is not sufficient to survive a motion made pursuant to Rule 12(b)(6)." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). To survive a motion to dismiss, the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim. However, the complaint must allege sufficient facts to establish those elements." *Walters*, 684 F.3d at 439 (citation omitted). "Thus, while a plaintiff does not need to demonstrate in a complaint that the right to relief is 'probable,' the complaint must advance the plaintiff's claim 'across the line from conceivable to plausible.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).

In considering a Rule 12(b)(6) motion, the court does not always have to limit its review to the pleadings. It can also take judicial notice of public records, including statutes, and can "consider documents incorporated into the complaint by reference, as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic." *United States ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014) (citations and internal quotation marks omitted).

## ANALYSIS

WFMS has moved to dismiss Plum House's claims against it pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The court will address Plum House's negligence and breach of contract claims in turn.

1. Negligence

Plum House alleges that WFMS owed it a duty—which WFMS breached—to properly and carefully enter all information, including the American Express ID number, into the WFMS account to ensure that Plum House received all credit card payments made by restaurant customers. (Compl. ¶¶ 19, 20.)  To address WFMS's motion to dismiss this negligence claim, the court must decide whether New York or Maryland law applies to the plaintiff's cause of action, and, under either state's law, whether the economic loss rule limits the plaintiff's ability to sue in negligence.

The parties' stipulation states that "New York law will apply to Plaintiff's *causes* of action." (Stipulation 1 (emphasis on plural added).) In its response in opposition to WFMS's motion to dismiss, however, Plum House addresses only Maryland case law. (*See* Resp. Opp'n 3-5.) WFMS in its reply also cites to Maryland case law, although presumably only to address the plaintiff's response; in a footnote, WFMS argues that the parties' choice of law stipulation should govern and the plaintiff cannot recover under New York law. (Reply 3 n.2.) There is no question the parties can agree that New York law governs any breach of contract claims, *see, e.g.*, *Jackson v. Pasadena Receivables, Inc.*, 921 A.2d 799, 803 (Md. 2007), and they have done so both in the Agreement's choice of law provision, (Mot. Dismiss Mem. Law Ex. A § 36.1, Agreement, ECF No. 14-2), and also with the stipulation.[1] This court sees no reason why a clear, consensual stipulation such as the one filed in this case should not dictate which state's law applies to the parties' controversy, including any negligence claims. This reasoning makes particular sense given "the close relationship of the tort claims to the contract." *Hitachi Credit Am. Corp. v. Signet Bank*, 166 F.3d 614, 628 (4th Cir. 1999) (applying Virginia choice of law

---

[1] The court finds that the Agreement, which is attached to WFMS's motion to dismiss, is integral to the complaint and authentic. *See Oberg*, 745 F.3d at 136.

rules).[2] Ultimately, however, the choice of law is not determinative: under either New York or Maryland law, the plaintiff's negligence claim will be barred by the economic loss rule.

**New York Law**

The economic loss rule, which prevents a plaintiff from recovering in tort for purely economic losses caused by a defendant's negligence, was adopted by the New York Court of Appeals in *Schiavone Constr. Co. v. Elgood Mayo Corp.*, 436 N.E.2d 1322, 1323 (N.Y. 1982) (adopting the reasoning of the dissenting opinion below). "To prevent [] open-ended liability, courts have applied the economic loss rule to prevent the recovery of damages that are inappropriate because they actually lie in the nature of breach of contract as opposed to tort." *Hydro Inv'rs, Inc. v. Trafalgar Power Inc.*, 227 F.3d 8, 16 (2d Cir. 2000). Courts applying New York law have been more likely to apply the economic loss rule when a duty owed derived from a contract, and any harms suffered were not distinct from a contract.[3] *See id.* at 17. Some courts applying New York law have found claims of negligent provision of services to be an exception to the economic loss rule, but generally only when a special relationship exists between the plaintiff and the defendant.[4] *See, e.g.*, *Niagara Mohawk Power Corp. v. Stone & Webster Eng'g Corp.*, 725 F. Supp. 656, 661 (N.D.N.Y. 1989) (noting, in reference to whether a provider of services could be found liable for negligence when a plaintiff was alleging only economic loss, that, *inter alia*, (1) courts in New York generally do not recognize a tort action for the breach of a simple contract for goods or services, (2) employing language familiar to tort law when

---

[2] The choice of law provision in this case is not as broad as the contract language in *Hitachi*, 166 F.3d at 624, but the parties' stipulation that New York law applies to the plaintiff's causes of action should sufficiently "indicate[] that the parties intended to cover more than merely contract claims," *id.* at 628.

[3] New York courts have disagreed about whether the economic loss rule should apply outside its original context of product liability suits against manufacturers. *See Travelers Cas. & Sur. Co. v. Dormitory Auth.–State of New York*, 734 F. Supp. 2d 368, 378 n.15 (S.D.N.Y. 2010) (listing conflicting opinions).

[4] Courts have not been consistent in recognizing the exception for negligent provision of services. *See Shema Kolainu–Hear Our Voices v. ProviderSoft, LLC*, 832 F. Supp. 2d 194, 207 (E.D.N.Y. 2010) (noting that the exception has been recognized by several courts applying New York law but called into question by others).

describing a contractual breach will not transform a contract claim into one sounding in tort, and (3) cases in which the asserted tortious conduct is independent of the contractual relationship are distinguishable); *Travelers Cas. & Sur. Co.*, 734 F. Supp. 2d at 378 (A plaintiff cannot recover in tort for purely economic losses caused by the defendant's negligence unless there exists "a special relationship that requires the defendant to protect against the risk of harm to the plaintiff." (quoting *532 Madison Ave. Gourmet Foods, Inc. v. Finlandia Ctr., Inc.*, 750 N.E.2d 1097, 1101 (N.Y. 2001))). As a general rule, arms'-length transactions between sophisticated parties should not be held to create special responsibilities absent some express agreement to that effect. *Calvin Klein Trademark Tr. v. Wachner*, 129 F. Supp. 2d 248, 250 (S.D.N.Y. 2001) (noting that a Service Agreement that stated the servicer had a duty to proceed in good faith was "far removed" from the "much higher duties created by a fiduciary relationship, and will at most support a claim for contractual breach").

Here, Plum House claims only economic injury—in the form of the American Express payments it claims were improperly transferred to John Doe/ABC Co.—from WFMS's alleged negligence. (Compl. ¶ 21.) In terms of whether a special relationship exists between the parties that would allow the plaintiff to overcome the economic loss rule, Plum House alleges that WFMS owed it a duty "to properly and carefully enter all information necessary to ensure that Plaintiff actually received all money charged by its customers on their credit cards," and "to properly and carefully enter the American Express Merchant ID Number into Merchant Services' system when setting up the Plaintiff credit card processing account." (Compl. ¶ 19.) These alleged duties are not distinct from the contract between Plum House and WFMS; whatever "trust and confidence" was placed in WFMS "had solely to do with [its] carrying out [its] obligations under the contract." *Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98

F.3d 13, 20 (2d Cir. 1996) (discussing whether a fiduciary duty distinct from contractual obligations was owed). Further, the plaintiff has not pled that the allegedly negligent performance of contractual services caused injury to any non-parties, or that WFMS is a professional, as in *Hydro Investors, Inc.*, subject to an action for the tort of professional malpractice independent of or in addition to claims for breach of contract. *See Niagara Mohawk Power Corp.*, 725 F. Supp. at 665-666; *see also Hydro Investors, Inc.*, 227 F.3d at 17-18. Finally, "the economic loss doctrine protects parties' abilities to allocate risk by mutual agreement and thereby form reliable expectations about their potential financial exposure with respect to the duties and liabilities that they have contractually assumed." *Travelers Cas. & Sur. Co.*, 734 F. Supp. 2d at 379. Here, the plaintiff does not suggest that there was any sort of power imbalance or other misconduct in negotiating the contract, which was signed by two sophisticated businesses, such that their agreement should not be respected. The court finds that, under New York law, the economic loss rule bars the plaintiff from bringing a negligence claim against WFMS.

**Maryland Law**

To determine whether a tort duty exists under Maryland law, courts consider "the nature of the harm likely to result from a failure to exercise due care, and the relationship that exists between the parties." *Jacques v. First Nat'l Bank of Md.*, 515 A.2d 756, 759 (Md. 1986). "Where the failure to exercise due care creates a risk of economic loss only, courts have generally required an intimate nexus between the parties as a condition to the imposition of tort liability." *Id.* As in New York, however, "[a] contractual obligation, by itself, does not create a tort duty. Instead, the duty giving rise to a tort action must have some independent basis." *Nat'l Labor Coll., Inc. v. Hillier Grp. Architecture N.J., Inc.*, 739 F. Supp. 2d 821, 827 (D. Md. 2010)

(alteration in original) (quoting *Mesmer v. Md. Auto. Ins. Fund*, 725 A.2d 1053, 1058 (Md. 1999)); *see also Chubb & Son v. C & C Complete Servs., LLC*, 919 F. Supp. 2d 666, 675 (D. Md. 2013) ("Although contractual privity or its equivalent may satisfy this intimate nexus, not every contractual duty gives rise to a tort duty."). Accordingly, courts applying Maryland law have "attempted to limit remedies to contract law where the loss is purely economic and the parties engaged in arms-length commercial bargaining." *Chubb & Son*, 919 F. Supp. 2d at 675 (quotation omitted).

Again, Plum House claims only economic injury from WFMS's alleged negligence. (Compl. ¶ 21.) The plaintiff, however, relies on *Jacques* to argue that a special relationship exists between it and WFMS sufficient to overcome the economic loss rule. The *Jacques* Court, however, emphasized that the bank in that case owed a duty of reasonable care to the plaintiffs because of "the particular facts of th[e] case," 515 A.2d at 756, and acknowledged that "[t]he mere negligent breach of contract, absent a duty or obligation imposed by law independent of that arising out of the contract itself, is not enough to sustain an action sounding in tort," *id.* at 759 (quoting *Heckrotte v. Riddle*, 168 A.2d 879, 882 (Md. 1961)). The particular circumstances that justified finding a special relationship between the parties in *Jacques* are absent in this case. First, *Jacques* involved a bank, and "[t]he banking business is affected with the public interest." *Id.* at 763. WFMS correctly points out that, despite the fact that its name is affiliated with a national bank, it is not a bank but a merchant payment card processor. (Reply 4 n.3.) Even if WFMS were a bank, courts are reluctant, absent "special circumstances," to "transform an ordinary contractual relationship between a bank and its customer into a fiduciary relationship or to impose any duties on the bank not found in the [] agreement." *Legore v. OneWest Bank, FSB*, 898 F. Supp. 2d 912, 919 (D. Md. 2012) (quoting *Parker v. Columbia Bank*, 604 A.2d 521, 532

(Md. Ct. Spec. App. 1992)). Second, and more importantly, *Jacques* involved individual consumers, who, given the circumstances of the case and the relationship between the parties, were "particularly vulnerable and dependent upon the Bank's exercise of due care." *Jacques*, 515 A.2d at 762. Here, in contrast, Plum House and WFMS are commercial enterprises that engaged in an arms'-length transaction. As stated above, there is no evidence to suggest a disparity in the strength of either party's bargaining position, or that one party was more sophisticated than the other. Accordingly, although Plum House may be in privity with WFMS, the alleged nexus is insufficiently intimate to warrant the imposition of a tort duty under Maryland law.

In conclusion, under either New York or Maryland law, the economic loss doctrine applies. WFMS's motion to dismiss Plum House's negligence claim will be granted.

2. Breach of contract

The plaintiff also alleges that WFMS breached the Agreement by failing to transfer to Plum House the funds charged on American Express credit cards at the plaintiff's restaurant between November 1, 2012, and November 6, 2014. (Compl. ¶ 24.) WFMS's first argument opposing the breach of contract claim is that, pursuant to Section 18.11 of the parties' Agreement, Plum House was required to "promptly and carefully review statements or reports provided [by WFMS or others] . . . reflecting Card transaction activity," including from accounts at financial services institutions, and to notify WFMS within sixty days "after any debit or credit is, or should have been effected." (Agreement § 18.11, Glossary.) Instead, the plaintiff only discovered the alleged issue with its customers' American Express payments after it received the letter from American Express on or about October 22, 2014, and in the telephone calls with WFMS and American Express at some point shortly thereafter.[5] (Compl. ¶ 14.) Plum House

---

[5] WFMS argues that, in the absence of any allegation to the contrary, it was made aware of the alleged payments issue only when it was served with the complaint in this case, on or about July 31, 2015. (Mot. Dismiss Mem. Law

counters that it was required to notify WFMS of the allegedly misdirected payments within sixty days of their *discovery*, i.e., within sixty days of the American Express letter, because the monthly statements WFMS sent the plaintiff showed the American Express transactions as being properly processed. (Resp. Opp'n 5-6; *id.* at 6 n.1.) WFMS's second argument is that, even if the Agreement's notice provision does not bar Plum House's recovery, the plaintiff's liability is limited by Section 20.4 of the Agreement, which states that WFMS's "cumulative liability for all losses, claims, suits, controversies, breaches or damages for any cause whatsoever (including, but not limited to, those arising out of or related to this agreement), regardless of the form of action or legal theory shall not exceed, (I) $50,000; or (II) the amount of fees received by [WFMS] pursuant to this agreement for services performed in the immediately preceding 12 months, whichever is less." (Agreement § 20.4.) Plum House argues that the limitation of liability clause should not be enforced because WFMS engaged in gross negligence. (Resp. Opp'n 6-7.)

As stated above, the parties have specified in the Agreement that New York law applies to the breach of contract claim. (*See* Mot. Dismiss Mem. Law 12; Resp. Opp'n 6-7.) This court will enforce the choice of law provision. *See Jackson*, 921 A.2d at 803. Absent a statute or public policy to the contrary, or a special relationship between the parties, a contractual provision absolving a party from its own negligence will be enforced under New York law. *See Sommer v. Fed. Signal Corp.*, 593 N.E.2d 1365, 1370 (N.Y. 1992) (regarding a statute or public policy); *Florence v. Merchs. Cent. Alarm Co.*, 412 N.E.2d 1317, 1318 (N.Y. 1980) (regarding a special relationship). It is the public policy of New York, however, that "a party may not insulate itself from damages caused by grossly negligent conduct." *Sommer*, 593 N.E.2d at 1370. This policy

---

13 n.6.) As the plaintiff points out, however, Plum House's complaint alleges that both parties were on telephone calls regarding the American Express charges at some point after October 22, 2014, and presumably before November 6, 2014. (Compl. ¶ 15.)

"applies equally to contract clauses purporting to exonerate a party from liability and clauses limiting damages to a nominal sum." *Id.* at 1371. Gross negligence is "conduct that evinces a reckless disregard for the rights of others or 'smacks' of intentional wrongdoing." *Colnaghi, U.S.A., Ltd. v. Jewelers Prot. Servs., Ltd.*, 611 N.E.2d 282, 284 (N.Y. 1993) (citing *Sommer*, 593 N.E.2d at 1371).

This court is persuaded by WFMS's interpretation of Section 18.11 of the Agreement. That section requires Plum House to review all statements reflecting credit card transaction activity, including statements from accounts with outside financial institutions, within sixty days after any "credit or debit is, or should have been effected." (Agreement § 18.11; Glossary.) Plum House apparently is arguing that it was unable to provide the required notice to WFMS because the monthly statements sent by WFMS displayed the American Express transactions as having been properly processed. (Resp. Opp'n 6 n.1.) Presumably, however, Plum House was receiving regular bank account statements and could have noticed, during the two years the American Express payments allegedly were diverted, that $349,395.14 was missing. Accordingly, Plum House only can recover any payments that occurred during the sixty-day period immediately preceding when it first informed WFMS of the issue, presumably in its first telephone call with WFMS at some point after October 22, 2014.

This court also finds that the Agreement's limitation of liability clause is enforceable. As described above, the parties were negotiating businesses and were not in a special legal relationship with one another. Further, Plum House has not pled gross negligence or any allegations sufficient to constitute gross negligence that would warrant an amended complaint by the plaintiff. Plum House argues that gross negligence on the part of WFMS "can be inferred from the fact that the American Express Merchant ID Number entered by Wells Fargo was not

merely a transposition of numbers, but a completely different and unrelated American Express Merchant ID Number." (Resp. Opp'n 7.) This claim, however, does not allege "conduct that evinces a reckless disregard for the rights of others or 'smacks' of intentional wrongdoing." *Colnaghi, U.S.A., Ltd.*, 611 N.E.2d at 284.[6]

In conclusion, Plum House may be able to recover any American Express payments improperly transferred during the sixty-day period immediately preceding when Plum House notified WFMS of the issue, subject to the Agreement's limitation of liability clause. Accordingly, WFMS's motion to dismiss Plum House's breach of contract claim will be granted in part and denied in part.

## CONCLUSION

For the reasons stated above, this court will grant WFMS's motion to dismiss Plum House's negligence claim, and grant in part and deny in part WFMS's motion to dismiss Plum House's breach of contract claim. Counsel will be contacted to set a discovery schedule, after WFMS files its answer. A separate order follows.


January 28, 2016                                    /s/
Date                                        Catherine Blake
                                            United States District Judge


---

[6] If, in the course of discovery, the plaintiff is able to substantiate its claims that it could not have known that the American Express payments were being diverted, or that WFMS engaged in gross negligence, the plaintiff then may seek leave to amend its complaint.